1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

YUICHI MIYAYAMA,

          Plaintiff

vs.

Quality Loan Service Corporation, a California Corporation; Ditech Financial LLC fka Green Tree Servicing LLC,

          Defendants

Case No.: 2:16-cv-00413-JAD-CWH

**Order Granting Motion to Dismiss and Denying Motion for Sanctions**

ECF Nos. 10, 22

     Plaintiff Yuichi Miyayama purchased property encumbered by Ditech Financial LLC's first deed of trust and brings this action to stop Ditech from foreclosing on that interest.  Miyayama claims that NRS 107.080 requires Ditech to provide him with notice of the sale, but it failed to do so, and that the notice lacks the details required by NRS 107.087(b).  He seeks declarations that he has a right to cure the default and that Ditech lacks standing to foreclose because it no longer possesses both the promissory note and deed of trust.[1]  Miyayama also sues for unjust enrichment, theorizing that, if Ditech forecloses and ousts him from the property, it will unfairly retain the benefit of his maintenance of the property since he bought it for $10,000 in October 2014.[2]

     Ditech and Quality Loan move to dismiss Miyayama's claims, arguing that they fail as a matter of law and fact, and Ditech also asks for sanctions for having to defend from this "meritless" lawsuit.[3]  I find that Miyayama's legal theories for his NRS 107.080 and declaratory relief claims are unsound and that his NRS 107.087 claim is disproven by the recorded notices, so I dismiss these claims.  But because I am not yet convinced that Miyayama can plead no set of facts that entitle him

---

[1] ECF No. 1 at 9–16 (complaint).

[2] *Id*. at 13–14.

[3] ECF No. 10 (Ditech's motion); ECF No. 17 (Quality Loan Service's joinder); ECF No. 22 (motion for sanctions).

1  to relief on an NRS 107.080 theory, I dismiss that claim with leave to amend.  I also find that

2  plaintiff's unjust-enrichment claim is unripe as pled, and I dismiss it without prejudice to his ability

3  to bring a new action for unjust enrichment if and when it ripens.  I then deny Ditech's motion for

4  sanctions.

5  **Background**

6       Urawee Kaithong purchased the home at 2343 La Puente Street, Las Vegas, Nevada in June

7  2006 with a $180,000 loan from First National Lending Services.[4]  Kaithong signed a promissory

8  note for the debt and executed a first deed of trust in favor of Mortgage Electronic Registration

9  Systems, Inc. ("MERS") to secure it; the documents were recorded in 2006.[5]  MERS assigned the

10  deed of trust and the related note to BAC Home Loans Servicing in 2010,[6] and a second assignment

11  in 2013 transferred the loan to Green Tree Servicing LLC, Ditech's predecessor in interest.[7]  Trustee

12  substitutions in 2010 and 2013 put Quality Loan Service Corporation in BAC's place as loan

13  servicer.[8]

14       Kaithong defaulted on the mortgage and filed for Chapter 7 bankruptcy protection in August

15  2012.[9]  Kaithong's bankruptcy trustee moved to sell the property, and the bankruptcy court granted

16  the request in part; the trustee was authorized to sell the property at auction—subject to all liens,

17  encumbrances, and claims, which necessarily included Ditech's first deed of trust.[10]  The property

18  sold to H&N Properties, LLC, in April 2014 for $2,500 under a Bankruptcy Trustee's Quitclaim

19  Deed "without warranty, whether express or implied, in an 'as-is, where-is' condition and with any

20

21  [4] ECF No. 11-1 at 2 (original deed of trust).  I take judicial notice of the recorded documents.

22  [5] *Id*.

23  [6] ECF No. 11-1 at 17 (assignment)

24

25  [7] ECF No. 11-1 at 25 (second assignment).

26  [8] ECF No. 11-1 at 19–22.

27  [9] ECF No. 11-1 at 28.

28  [10] ECF No. 11-3 at 11 (order granting motion to sell property).

faults" and "**SUBJECT TO ANY AND ALL CLAIMS, LIENS, AND OTHER ENCUMBRANCES.**"[11]  H&N sold its interest to Miyayama six months later for $10,000.[12]

In July 2015, Quality Loan, as trustee, recorded a Notice of Breach and Default and Election to Cause Sale of Real Property Under Deed of Trust,[13] and the State of Nevada Foreclosure Mediation Program recorded a mediation certificate authorizing Ditech to proceed with the foreclosure process.[14]  On January 5, 2016, Quality Loan recorded a Notice of Trustee's Sale.[15] Miyayama filed this lawsuit in Nevada's Eighth Judicial District Court and obtained an order temporarily restraining the sale[16] before Ditech removed the case to federal court.[17]

Miyayama alleges four claims: (1) the sale would violate NRS 107.080 because the statute requires notice to "all persons with an interest in the property, including plaintiff"[18]; (2) plaintiff is entitled to declarations that (a) he has a right to cure the default and (b) defendants lack standing to foreclose because they "do not possess both the promissory note and deed of trust"; (3) defendants have been unjustly enriched by "the substantial improvements" plaintiff has made to the property; and (4) defendants violated NRS 107.087 because they failed to include contact information for the trustee in the notice of sale.

Defendants move to dismiss all four claims, arguing that (1) NRS 107.080 does not require notice to Miyayama—it required notice to Kaithong *or* him; (2) his declaratory-relief theories are legally wrong; (3) his unjust-enrichment claim is at best unripe because there has been no foreclosure

---

[11] ECF No. 11-3 at 16 (emphasis original).

[12] ECF No. 11-3 at 22 (grant, bargain, and sale deed).

[13] ECF No. 11-3 at 26 (notice of default and election to sell).

[14] *Id*. at 34 (mediation certificate).

[15] ECF No. 20 at 5–7 (notice of sale).

[16] ECF No. 1 at 91 (TRO).

[17] ECF No. 1 (petition for removal).

[18] ECF No. 1 at 12 (emphasis removed).

sale yet; and (4) the notice of sale contains all the contact information that NRS 107.087 requires.[19]
Ditech also argues that plaintiff's claims are so meritless that plaintiff should be ordered to pay
Ditech's attorney's fees and costs.[20]   Although I grant the motion to dismiss, I deny the motion for
sanctions.[21]

**Discussion**

**I.      Ditech's Motion to Dismiss**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain
statement of the claim showing that the pleader is entitled to relief."[22]   While Rule 8 does not require
detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to
relief that is plausible on its face."[23]   This "demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative
level."[24]   In other words, a complaint must make direct or inferential allegations about "all the
material elements necessary to sustain recovery under *some* viable legal theory."[25]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a
Rule 12(b)(6) motion to dismiss.   First, the court must accept as true all well-pled factual allegations
in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[26]

---

[19] ECF No. 10.

[20] ECF No. 22.

[21] I find these motions suitable for resolution without oral argument.  L.R. 78-1.

[22] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[23] *Twombly*, 550 U.S. at 570.

[24] *Iqbal*, 556 U.S. at 678.

[25] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[26] *Iqbal*, 556 U.S. at 678–79.

1   Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[27]

2   Second, the court must consider whether the well-pled factual allegations state a plausible claim for

3   relief.[28]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a

4   reasonable inference that the defendant is liable for the alleged misconduct.[29]  A complaint that does

5   not permit the court to infer more than the mere possibility of misconduct has "alleged—but not

6   shown—that the pleader is entitled to relief," and it must be dismissed.[30]

7          **A.       Plaintiff's first cause of action is based on a misreading of NRS 107.080.**

8          "The tenet that a court must accept as true all of the allegations contained in a complaint is

9   inapplicable to legal conclusions."[31]  It is in the legal conclusions that plaintiff's first claim for relief

10  falters.  Factually, Miyayama alleges that he was not sent the foreclosure notices required by NRS

11  107.080, and he avers that this statute "requires Defendants to provide notice of the default and

12  election to sell and/or notice of trustee sale to all persons with an interest in [the] property,

13  including" him.[32]  But Miyayama's characterization of NRS 107.080 is not supported by the statute's

14  language, which requires that the notice of default be sent "to the grantor, **or** to the person who holds

15  the title of record on the date the notice of default and election to sell is recorded."[33]  Under the plain

16  statutory language, the defendants were not required to send the notice to Miyayama; they could have

17  satisfied the statute by sending the notice to the grantor, Kaithong.[34]  Because Miyayama bases this

18

19  [27] *Id.*

20  [28] *Id.* at 679.

21  [29] *Id.*

22  [30] *Twombly*, 550 U.S. at 570.

23  [31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24  [32] ECF No. 1 at 12.

25

26  [33] Nev. Rev. Stat. § 107.080(3) (emphasis added).

27  [34] Plaintiff also offers policy arguments for why NRS 107.080(3) should be construed to require that
    the notices to be provided to the current record title holder and why he should have a right to cure the

28  default, arguing that the statute violates his due-process rights.  ECF No. 16 at 6-15.  But NRS

Page 5 of 11

1  claim on the legal theory that NRS 107.080 required defendants to send the notice to him, when it

2  could have also been satisfied by sending the notice to Kaithong, I dismiss this claim as legally

3  implausible.  But I do without prejudice and with leave to amend this claim if Miyayama can

4  truthfully allege that the defendants sent the notice to *neither* him nor Kaithong.[35]

5          Defendants point out one more wrinkle in Miyayama's ability to plead a viable NRS

6  107.080-violation theory: the unresolved question of whether Miyayama even acquired valid title to

7  the property from H&N in the first place.  The bankruptcy court's order authorizing the original

8  auction at which H&N acquired title states:

9              Upon payment of the Final Price, the Trustee will provide the § 363(b)
            Buyer with a Declaration of Value and a Trustee's Quitclaim Deed
10          (together, the "Documents"); **these Documents, along with this
            Order, must be recorded with Clark County Recorder's Office no
11          later than 14 days after delivery to the § 363(b) Buyer.**  By
            accepting the Documents, the § 363(b) Buyer agrees that it is solely
12          responsible for ensuring this timely recordation and for presenting
            evidence of this timely recordation to the Trustee within 20 days of the
13          delivery.  **Failure to timely record shall automatically void the §
            363(b) sale and the Documents delivered, meaning any later
14          attempt to record them after the 14 days has expired shall provide
            the § 363(b) Buyer with no legal basis to successfully transfer the
15          estate's interest in the Property**. . . . Additionally, failure to timely
            record shall immediately permit the Trustee to resell the estate's
16          interest in the Property to someone [else].[36]

17  There remains a question of whether H&N satisfied this recording requirement.  Although the

18  trustee's sale occurred on April 11, 2014, the deed was not recorded until 33 days later on May 14,

19  2014, so it is possible that the sale to H&N—and thus the downstream transfer to Miyayama—is

20  void.[37]  The x factor here is when the documents were delivered to H&N.  Miyayama has not pled

21  any facts about that process, and because I would have to consider evidence outside the record to

22

23

24  107.080(3) unambiguously identifies the parties entitled to notice in an alternative ("or")—not
    conjunctive ("and") manner.  It is not the job of the court to rewrite a plainly worded legislative
25  provision like this one.  And plaintiff has not asserted a due-process claim in his complaint.

26  [35] *But see* note 54 *infra*.

27  [36] ECF No. 11-3 at 12 (emphasis added).

28  [37] ECF No. 11-3 at 16 (compare signature notarized on 4/11/14 with recording date of 5/14/14).

resolve that question, it is not one properly answered in this Rule 12(b)(6) proceeding.  I thus do not find that the unanswered question about whether Miyayama's predecessor in interest H&N timely recorded its quitclaim deed from the bankruptcy trustee to be a pleading obstacle at this time. Plaintiff has pled that he acquired his interest in the property via deed from H&N, and at this stage in the litigation, that is enough to stave off dismissal based on a standing challenge.

Accordingly, this claim is dismissed with leave to amend it if Miyayama can plead true facts to show that neither he nor Kaithong received notice under NRS 107.080.

### B.	The notices satisfy NRS 107.087.

Jumping forward to Miyayama's  fourth claim for relief, I find that it fails based on judicially noticed documents.  For this claim, Miyayama alleges that defendants' notice of sale lacks the contact information required by NRS 107.087 to permit it go forward with the foreclosure.[38]  But the notice of sale[39]—of which I take judicial notice because it was recorded in the public record—plainly contains the statutorily required information.  NRS 107.087(1)(b)(2) requires the notice of sale to contain "The contact information of the trustee or the person conducting the foreclosure who is authorized to provide information relating to the foreclosure status of the property."[40]  This notice of sale identifies Quality Loan Service Corporation and its address.[41]  It also provides a phone number "For NON SALE information only," one for "Sale" information, and one for "Reinstatement."  And it provides a website address for information about the sale.  It thus does not appear that plaintiff can state a plausible claim under the NRS 107.087 theory advanced in his fourth cause of action. Because it does not appear that plaintiff could plead any set of true facts to support a claim on this theory, I dismiss his fourth cause of action with prejudice and without leave to amend.

### C.	Plaintiff has not yet pled a plausible unjust-enrichment claim.

In his third claim for relief, plaintiff alleges that defendants have been unjustly enriched

[38] ECF No. 1 at 15.

[39] ECF No. 20 at 5.

[40] Nev. Rev. Stat. § 107.087(1)(b)(2).

[41] ECF No. 20 at 7.

1   because he "has spent a substantial amount of money improving the subject property" and because

2   defendants' "deed of trust has been paid in full through the original trustor's mortgage insurance."

3   Neither of these facts states a plausible claim for unjust enrichment.

4          First, the fact that the original trustor's mortgage insurance may have paid off the mortgage

5   debt does not give Miyayama a claim for unjust enrichment.  In *Topaz Mutual Company v.*

6   *Marsh*—the case that plaintiff cites in his complaint for Nevada's law of unjust enrichment—makes

7   it clear that the primary element for this claim is "a benefit conferred on the defendant ***by the***

8   ***plaintiff***."[42]  Because plaintiff affirmatively pleads that this benefit was conferred by the mortgage

9   insurer, not him, he clearly cannot state an unjust enrichment claim based on that debt satisfaction.

10         Nor does Miyayama's contention that he spent money maintaining and improving the

11  property necessarily give rise to an unjust enrichment claim.  The second and third elements of an

12  unjust-enrichment claim are "appreciation by the defendant of [the] benefit [conferred by the

13  plaintiff] and acceptance and retention by the defendant of [the] benefit."[43]  In *Topaz Mutual*, the

14  Nevada Supreme Court noted that improvements on a property benefit the homeowner,[44] so I cannot

15  presume that improvements that Miyayama made qualify as benefits to the defendants.  Most

16  importantly, Miyayama has not pled any facts to suggest that the defendants appreciated that these

17  benefits had been conferred and that they accepted and retained them.  The lack of these allegations

18  is only compounded by the fact that the foreclosure sale has not yet transpired: even if Miyayama

19  could plead facts to show benefit, appreciation, acceptance, and retention, he has not pled any facts

20  to show that his unjust-enrichment claim is ripe.  Accordingly, I dismiss Miyayama's third claim for

21  relief without prejudice to his ability to file a new action based on this claim if and when it becomes

22  ripe.

23

24

---

25  [42] *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (emphasis added); *see also* ECF No. 1 at

26  14, ¶ 27 (quoting *Topaz Mutual*).

27  [43] *Topaz Mut.*, 839 P.2d at 613.

28  [44] *Id*.

**D.    Plaintiff's declaratory-relief theories are legally unsound.**

Plaintiff's final claim is for declaratory relief.  He offers two theories: (1) that the defendants lack standing to foreclose because they do not hold both the deed of trust and the note; and (2) that plaintiff is entitled to an opportunity to cure the default on the loan.  Neither is supported by Nevada law.

The notion underlying the first theory—that separation of the note and deed of trust necessarily bars foreclosure—was rejected by the Nevada Supreme Court in *Edelstein v. Bank of New York Mellon* and *In re Monteirh*.[45]  As the Court explained, "after being split, 'the documents, and their respective interests, survive even if held by different parties.'"[46]  "Foreclosure is not impossible if there is either a principal[-]agent relationship between the note holder and the mortgage holder, or the mortgage holder 'otherwise has authority to foreclose in the note holder's behalf.'"[47] Miyayama has not pled any facts to show the lack of principal-agent relationship necessary for foreclosure to be barred based on the separation of the note from the deed of trust.  Accordingly, Miyayama has failed to state a justiciable controversy or "a legally protectable interest" in that controversy based on his separation-of-documents theory.[48]

Similarly deficient is plaintiff's theory that he is entitled to a right-to-cure declaration. Quoting *Title Insurance and Trust Company v. Chicago Title Insurance Company*, he alleges that "[u]nder Nevada law, a 'purchaser of real estate . . . should have a reasonable opportunity to cure a

---

[45] *Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 259 (Nev. 2012); *In re Monteirh*, 354 P.3d 648, 651 (Nev. 2015).

[46] *In re Monteirh*, 354 P.3d at 650 (quoting *In re Phillips*, 491 B.R. 255, 275 (Bankr. D. Nev. 2013)).

[47] *Id*. (quoting Restatement (Third) of Prop.: Mortgages § 5.4 cmts. c & e (1997)).

[48] *See Cty. of Clark, ex rel. Univ. Med. Ctr. v. Upchurch*, 961 P.2d 754, 756 (Nev. 1998) ("Declaratory relief is available only if: (1) a justiciable controversy exists between persons with adverse interests, (2) the party seeking declaratory relief has a legally protectable interest in the controversy, and (3) the issue is ripe for judicial determination.").

1   default or deficiency before the property may be sold by the trustee."[49]  But *Title Insurance and Trust*

2   *Company* is inapposite here.  In it, the Nevada Supreme Court found that the "purchaser under a

3   recorded long-term real estate installment contract[] was entitled to notice of the trustee's sale as a

4   'successor in interest'" under an earlier version of NRS 107.080(3), which required—prior to its

5   1989 amendment—notice to be provided to "the grantor or his successor in interest."[50]  The removal

6   of the successor-in-interest language from the statute eliminates the relevancy of *Title Insurance and*

7   *Trust Company* to the instant case, which is based on the amended version of the statute.[51]  Plaintiff

8   has thus offered no viable legal right to cure the default, so this claim fails.  And because it does not

9   appear to me that the plaintiff can plead any facts to cure the deficiencies in this declaratory-relief

10  claim, it is dismissed with prejudice and without leave to amend.

11  **II.      Ditech's Motion for Sanctions**

12          Finally, Ditech asks the court to "sanction Plaintiff and enter an award of fees and costs in

13  Ditech's favor as the result of its having to engage counsel to defend against Plaintiff's and

14  Plaintiff's counsel's repeated frivolous filings, and to discourage counsel from bringing such claims

15  again."[52]  NRS 18.010(2)(b) authorizes an award of attorney's fees against litigants who bring

16  "frivolous or vexatious claims" because they "overburden limited judicial resources, hinder the

17  timely resolution of meritorious claims[,] and increase the costs of engaging in business and

18  providing professional services to the public."[53]  I do not find that sanctions are warranted here.

19  Although several of Miyayama's claims are meritless, I cannot conclude based on this record that all

20  were "brought or maintained without reasonable ground or to harass" the defendants, as required for

21

22  [49] ECF No. 1 at 12–13, ¶ 19 (quoting *Title Insurance and Trust Company v. Chicago Title Insurance*
    *Company*, 634 P.2d 1216, 1218 (Nev. 1981)).

23

24  [50] *Title Ins. & Trust Co.*, 634 P.2d at 1218 & n.1 (quoting pre-1989 version of the statute).

25  [51] Even if the statute still required notice to the grantor's successor in interest, Miyayama would not
    qualify because he did not acquire his interest from Kaithong: he got it from H&N, who got it (if at

26  all) from the bankruptcy trustee.

27  [52] ECF No. 22 at 6.

28  [53] Nev. Rev. Stat. § 18.010(2)(b).

1  an award of fees under NRS 18.010.  I am allowing Miyayama one opportunity to amend his NRS

2  107.080 claim if he can truthfully plead that neither he nor Kaithong received the required notice, so

3  it remains undecided whether any of Miyayama's claims can proceed.[54]  I also am not persuaded that

4  sanctions are appropriate on the basis of Ditech's footnoted argument that plaintiff's counsel has

5  brought numerous actions alleging similar claims.[55]  Ditech has not demonstrated that the cases were

6  identical or have been dismissed based on the very same deficiencies I have found here.

7  Accordingly, Ditech's motion for sanctions is denied.

8                                              **Conclusion**

9          Accordingly, IT IS HEREBY ORDERED that Ditech's motion to dismiss **[ECF No. 10] is**

10 **GRANTED**:

11         •        Plaintiff's claims for declaratory relief and violation of NRS 107.087 are dismissed

12                  with prejudice;

13         •        His unjust-enrichment claim is dismissed without prejudice to Miyayama's ability to

14                  file a new action based on this claim if and when it becomes ripe; and

15         •        His claim for violation of NRS 107.080 is dismissed **with leave to amend by**

16                  **February 2, 2017,** if he can truthfully plead that neither he nor the original grantor

17                  Kaithong received the statutorily required notice.

18         IT IS FURTHER ORDERED that Ditech's motion for sanctions **[ECF No. 22] is DENIED.**

19         DATED January 13, 2017.

20                                              _____

21                                              Jennifer A. Dorsey
                                                United States District Judge

22

23  _____

24  [54] Ditech has offered the affidavit of Bounlet Louvan in support of its motion for sanctions.  ECF No.
     23.  In it, Louvan swears that the notice was mailed to Miyayama at two different locations and to
25  the property itself.  *Id*. at 2–3.  The declarant also provided a document that purports to be an
     affidavit of mailing the notice of sale to Miyayama and to Kaithong.  *See* ECF No. 23 at 10–11.
26  Plaintiff is cautioned to consider that information carefully before filing an amended complaint in
     which he alleges that neither he nor Kaithong received the notice required by NRS 107.080.
27

28  [55] ECF No. 22 at 2, n.1.